## In re BENEDICT TEA & COFFEE CO.

(District Court, W. D. Kentucky. January 25, 1912.)

1. COURTS (§ 366*)—STATE COURT—DECISIONS—CONCLUSIVENESS ON FEDERAL COURTS.

A decision of the highest court of a state construing a statute of the state governing a domestic corporation binds a federal court sitting in the state on bankruptcy against the corporation.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 954–968; Dec. Dig. § 366.*

Conclusiveness of judgment between federal and state courts, see notes to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Bank v. City of Memphis, 49 C. C. A. 468.]

2. CONTRACTS (§ 76*)—CORPORATIONS (§ 450*).—EXCESSIVE DEBTS—VALIDATION.

Though a Kentucky corporation's debts exceeded its charter limit, the excess was validated by subsequent amendment of the charter enlarging the limit so as to include the whole debt and by the corporation then recognizing the debt as valid by giving a note therefor, entitling the creditor to participate equally with other general creditors in bankruptcy proceedings brought after the note was given.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 357–381; Dec. Dig. § 76;* Corporations, Cent. Dig. §§ 1793–1795; Dec. Dig. § 450.*]

In re the Benedict Tea & Coffee Company, bankrupt. On petition for review of an order of the referee. Affirmed.

J. R. Duffin and S. M. Sapinsky, for trustee.
R. Ruthenburg, for creditor.

EVANS, District Judge. [1, 2] Under its original articles of incorporation, the bankrupt was authorized to incur indebtedness not exceeding $2,500. Prior to April 29, 1911, it had become indebted, however, to divers persons in sums aggregating about $5,160. Of this amount it owed to the Ouerbacker Coffee Company (which we shall call the Coffee Company) $4,559.79. The opinion of the Court of Appeals of Kentucky in the case of Bell & Coggeshall Co. v. Kentucky Glass Works Co., 106 Ky. 7, 50 S. W. 2, 1092, 51 S. W. 180, construed the statute of the state under which the bankrupt had existence, and that construction is binding upon this court. Under that ruling, and inasmuch as it does not appear that the Coffee Company had, when its debt was created, any knowledge of the other debts of the bankrupt, which amounted to several hundred dollars, it is obvious that if the bankrupt had been insolvent in April, 1911, and if, for that reason, its affairs had then been wound up, only $2,500 of the claim of the Coffee Company would have been recognized or allowed, and that amount with the then existing claims of other creditors alone would have shared in any distribution of the bankrupt's

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

assets. The remaining $2,059.79 of the Coffee Company's claim would have been excluded as being an indebtedness in excess of the $2,500 limit as then fixed in the articles of incorporation.

On April 29, 1911, however, the bankrupt, as expressly permitted by Ky. St. § 559, amended its articles of incorporation, and by the consent of its directors and shareholders provided that the amount of indebtedness which the corporation might incur should not exceed $10,000. The bankrupt, having thus lawfully empowered itself to do so, and having, in fact, received and used all the merchandise supplied by the Coffee Company to the value of the indebtedness, and doubtless recognizing the strong moral obligation upon it, on May 25, 1911, executed to the Coffee Company its promissory note for the $4,559.79 due at 30 days, which note is the basis of that much of the debt proved by the Coffee Company. The referee allowed the claim for the full amount, and his refusal to disallow $2,059.79 of it is what the trustee complains of in his petition for a review. The other part of the debt proved is not contested.

Certain creditors of the bankrupt on June 29, 1911, filed a petition in involuntary bankruptcy against it. An effort to effect a settlement carried the case over the summer vacation, but, being at last unsuccessful, the alleged grounds of bankruptcy were confessed, and an adjudication was made September 1, 1911. No creditor did raise, and probably no one of them could have found an opportunity to raise, the question of excessive indebtedness against the Coffee Company previous to the amendment of the bankrupt's articles of incorporation. Nevertheless it may be important to remember that the statutory right to make such amendments is in no way conditioned or made to depend upon the consent of then existing creditors, and we think the "stress of justice" referred to by the Kentucky Court of Appeals in the Glass Works Case demands that we shall hold that the amendment of the articles and the clear and distinct recognition by the corporation of the moral obligation resting upon it combined with the execution of the note validated the entire indebtedness which even before was binding as between the parties to the extent that the bankrupt was bound to make restitution of the consideration. 106 Ky. 15, 16, 50 S. W. 2, 1092, 51 S. W. 180. Much support, we think, is given this conclusion by the opinion of the Supreme Court in Citizens' National Bank v. Appleton, 216 U. S. 196, 30 Sup. Ct. 364, 54 L. Ed. 443. Certainly the bankrupt at the time the note was executed had the power to incur liabilities to the extent of $10,000. It was clearly authorized under the statute (section 542) to contract and be contracted with. It entered into the contract evidenced by the note for $4,559.79, and manifestly there was good and valuable consideration for it. Neither the statute nor the articles of incorporation nor justice, nor good morals, in May, 1911, forbade the recognition by the bankrupt of an obligation such as rested upon it fairly to pay for the merchandise it had bought and used. There are not wanting signs that one of the main objects of the stockholders in amending the articles was to enable the corporation to pay the debt. This was a meritorious intention. Certainly it was by no means a vicious one. We think there was no right in the then existing creditors to prevent

the amendment or to put conditions upon it. Their right under the circumstances then existing to say that they were to be paid in full as a condition precedent to the amendment becoming effective is not provided for in the statute, nor has it ever been established by any decision of any court in Kentucky. Such right does not exist, and we think should not. At that stage in the affairs of a going concern (as the bankrupt then was), the rights of general creditors resulting from an amendment, if any exist at all, are too vague and indeterminate to be the basis of a claim to priority in any subsequent distribution should the corporation become bankrupt. As the statute does not provide otherwise, we think all general creditors in this instance must share equally. Their rights are to be determined as of the date of filing the petition in bankruptcy.

The order of the referee must be affirmed, and the petition for a review is dismissed.